## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

Mary BEACH; Rosemary STIFF; Tracy
FLANIGAN; Lisa PHILLIPS; Jeffrey
NESS, Elizabeth BARTON; Kathryn
Susan and Eugene Barton as legal
guardians for Kathryn Sarah BARTON;

on behalf of themselves and
all others similarly situated

      Plaintiffs,

      v.

John HUNT, in his individual and official
capacity; Tom LANDWEHR, duly
appointed and acting in his individual and
official capacity as Commissioner of the
Minnesota Department of Natural
Resources; Mark HOLSTEN, duly
appointed and acting in his individual and
official capacity as Commissioner of the
Minnesota Department of Natural
Resources; Michael CAMPION, duly
appointed and acting in his individual and
official capacity as Commissioner of the
Minnesota Department of Public Safety;
Mona DOHMAN, duly appointed and
acting in her individual and official
capacity as Commissioner of the
Minnesota Department of Public Safety;
STATE OF MINNESOTA
DEPARTMENT OF NATURAL
RESOURCES; and STATE OF
MINNESOTA DEPARTMENT OF
PUBLIC SAFETY; John and Jane DOE
Employees of the Minnesota Department
of Natural Resources, in their individual
and official capacities; John and Jane DOE
Employees of the Minnesota Department

Case No. 0:13-cv-00185-JNE/TNL

**FIRST AMENDED CLASS ACTION
COMPLAINT AND JURY
DEMAND**

1

of Public Safety, in their individual and )
official capacities, )
)
     Defendants. )
)
)
)

## INTRODUCTION

1. Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals for violations of federal and state statutory and common law resulting from the illegal, unauthorized and impermissible viewing of Minnesota driver's license and state identification records by Defendant State of Minnesota Department of Natural Resources ("DNR") employee John Hunt.

## THE PARTIES

2. Plaintiff Mary Beach is an adult female who resides in Washington County in the State of Minnesota. She is, and was, at all times material herein, a citizen of the United States. At all times relevant to this action, she has had a Minnesota driver's license.

3. Plaintiff Rosemary Stiff is an adult female who resides in Washington County in the State of Minnesota. She is, and was, at all times material herein, a citizen of the United States. At all times relevant to this action, she has had a Minnesota driver's license.

4. Plaintiff Tracy Flanigan is an adult female who resides in Hennepin County in the State of Minnesota. She is, and was, at all times material herein, a citizen of the

United States. At all times relevant to this action, she has had a Minnesota driver's license.

5.  Plaintiff Lisa Phillips is an adult female who resides in Hennepin County in the State of Minnesota. She is, and was, at all times material herein, a citizen of the United States. At all times relevant to this action, she has had a Minnesota driver's license.

6.  Plaintiff Jeffrey Ness is an adult male who resides in Washington County in the state of Minnesota. He is, and was, at all times material herein, a citizen of the United States. At all times relevant to this action, he has had a Minnesota driver's license.

7.  Plaintiff Elizabeth Barton is an adult female who resides in Washington County in the State of Minnesota. She is, and was, at all times material herein, a citizen of the United States. At all times relevant to this action, she has had a Minnesota driver's license.

8.  Plaintiffs Kathryn Susan Barton and Eugene Barton are acting in their capacity as legal guardians for Kathryn Sarah Barton who is an adult female.  All three reside in Washington County in the state of Minnesota.  All three are, and were, at all times material herein, citizens of the United States. At all times material herein, Kathryn Sarah Barton has had a state identification card issued by the State of Minnesota.

9.  The above named plaintiffs shall hereinafter be referred to collectively as "Plaintiffs."

10. Defendant John Hunt was employed by the DNR at all times relevant to this action. Upon information and belief, he acted under color of law and within the scope of his employment at the DNR. Hunt held the rank of Captain. Hunt's job responsibilities included, among others, the monitoring and safeguarding of the DPS database used by DNR employees and officers. By virtue of his employment, Hunt had access to the DPS Database. He is sued in his individual and official capacity.

11. Defendants Mark Holsten and Tom Landwehr (together "DNR Commissioners") were duly appointed and acting in their individual capacities as Commissioner of the Minnesota Department of Natural Resources at times relevant to this action. They were responsible for the hiring, supervision, and training of its employees, including Defendant Hunt. They are sued in their individual capacities for purposes of damages, and as to Tom Landwehr, also in his official capacity for purposes of prospective equitable and/or injunctive relief.

12. Defendants Michael Campion and Mona Dohman (together "DPS Commissioners") were duly appointed and acting in their individual capacities as Commissioners of the Minnesota Department of Public Safety ("DPS") at the times relevant to this action. They were responsible for the hiring, supervision, and training of its employees. They are both sued in their individual capacities for damages, and in addition, Dohman is sued in her official capacity for purposes of prospective equitable and/or injunctive relief.

13. Defendant DNR employed Defendants Hunt, Holsten and Landwehr (together "DNR Defendants") at times relevant to this action. The DNR is responsible for the hiring, supervision, and training of its employees, including Defendants Hunt, Holsten, and Landwehr. The DNR is sued directly and also, on all relevant claims, on the theories of *respondeat superior* and/or vicarious liability and pursuant to Minn. Stat. § 3.736 *et seq.* for the unlawful conduct of its employees.

14. Defendant State of Minnesota Department of Public Safety (the "DPS") employed Campion and Dohman at the times relevant to this action. The DPS is responsible for the hiring, supervision, and training of its employees, including Defendants Campion and Dohman. The DPS is sued directly and also, on all relevant claims, on the theories of *respondeat superior* or vicarious liability and pursuant to Minn. Stat. § 3.736 *et seq.* for the unlawful conduct of its employees.

15. Defendants DNR and DPS are agencies of the State of Minnesota and have consented to suit and liability for the state common law tort claims and MGDPA Claims under Minn. Stat. §§ 3.736 and 13.08.

16. Defendants John and Jane Doe Employees of Defendant DNR (hereinafter "Defendants DNR Does") are employees, agents, and contractors of Defendant DNR. They are sued in their individual and official capacities.

17. Defendants John and Jane Doe Employees of Defendant DPS (hereinafter "Defendants DPS Does") are employees, agents, and contractors of Defendant DPS. They are sued in their individual and official capacities.

## JURISDICTION AND VENUE

18. This is an action for monetary, declaratory, injunctive and prospective relief under 42 U.S.C. §§ 1983 and 1988; 18 U.S.C. § 2721, *et seq;*, Minn. Stat. § 13.01, *et. seq.*; and federal and state common law.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1343(a)(3), 1331, and 1367; the Fourth Amendment of the United States Constitution; and the Drivers' Privacy Protection Act ("DPPA"), 18 U.S.C. §2721 *et seq.*;  and pendent jurisdiction of state claims arising under Minnesota common law invasion of privacy and the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01 *et seq.*

19. Venue is proper in this district under 28 U.S.C. § 1391, as the acts and omissions giving rise to this action occurred in this district, and, on information and belief, all Defendants reside in this district.

## GENERAL ALLEGATIONS

20. Beginning in approximately January 2008 until October 2012, Hunt accessed and viewed Plaintiffs' and class members' private, personal information for impermissible, nongovernmental purposes. This information included private data from Plaintiffs' and class members' state identification, driving and/or motor vehicle records.

21. These private records contain information such as  full name, date of birth, driver's license number, state identification number, address, license status, driver's license and/or state identification photos, color of hair, color of eyes,

height, weight, and for some, medical and/or disability information (collectively "Private Information").

22. In addition to accessing and viewing Plaintiffs' Private Information, Hunt accessed and viewed the Private Information of thousands of other people.

23. Hunt viewed the Private Information of over 5,000 individuals for impermissible, improper, and nongovernmental purposes. He accessed Private Information over 19,000 times from 2008 through October 2012.

24. Most of the individuals whose Private Information Hunt accessed and viewed were women.

25. Plaintiffs did not give written consent to any of the Defendants to release, access, or view their Private Information.

26. Hunt was not authorized to access Plaintiffs' and class member's Private Information.  Hunt had no governmental purpose in accessing and viewing Plaintiffs' Private Information.

27. On information and belief, Hunt accessed and viewed the information through the Department of Vehicle Services' ("DVS") database.

28. The login page on the DVS website instructs users to refrain from accessing the information contained therein without express authorization.

29. On information and belief, Hunt accessed and viewed a significant amount of the Private Information during working hours.

30. On information and belief, Hunt used the DNR's equipment, including DNR issued laptops, to access and view the Private Information.

31. On information and belief, Hunt was working when he accessed and viewed private driver information.

32. On information and belief, Hunt downloaded and saved the Private Information of 170 class members to a folder on his computer.

33. On information and belief, Hunt was able to access the DVS database by virtue of his job's security clearance.

34. On information and belief, Hunt's job duties required him to access, at most, several hundred records from the DVS database per year.

35. Hunt accessed approximately 4,000 records from the DVS database per year on average from 2008 to 2012.

36. Under the direction of Campion and Mohman, the DPS created the DVS database and the system for state employees such as Hunt to access that information.

37. DPS, under the direction of Campion and Mohman, maintained and updated the DVS database.

38. DPS, under the direction of Campion and Mohman, and the DNR, under the direction of Landwehr and Holsten, provided Hunt with access to the DVS database.

39. DPS, under the direction of Campion and Mohman, and the DNR, under the direction of Landwehr and Holsten, had the ability to prevent Hunt's unauthorized access to the DVS database.

40. DPS, under the direction of Campion and Mohman, and the DNR, under the direction of Landwehr and Holsten, failed to prevent Hunt's unauthorized access to the DVS database.

41. Defendant DNR failed to put into place systems and/or procedures to ensure Plaintiffs' and class members' Private Information would be protected and would not be subject to misuse. Defendant DNR could have taken appropriate security safeguards in regard to Plaintiffs' and class members' Private Information, but failed to do so.

42. Alternatively, if Defendants DPS, DNR, Landwehr, Holsten, Campion and Mohman put into place safeguards to prevent Hunt's illegal access and viewing of Plaintiffs' records, those safeguards were inadequate to protect Plaintiffs' private information.

43. On or about January 14, 2013, the DNR sent a letter to Plaintiffs and over 5,000 other individuals confirming that a DNR employee had accessed and viewed their private driver information. An exemplar of that letter is attached hereto as Exhibit A. The DNR employee referenced in the letter was Hunt. Each of the Plaintiffs received such a letter from the DNR.

44. Defendant Hunt faces criminal charges in relation to his accessing and viewing of Plaintiffs' and class members' DPS records.

45. Defendants' conduct, as set forth above, caused Plaintiffs to suffer injuries, including but not limited to, emotional distress, anxiety, stress and fear, including fear of identity theft.

46. Defendants' conduct, as described above, upon information and belief, may result in an increased risk of identity theft.

47. As a result of Defendants' illegal actions, Plaintiffs have paid, and/or will be paying, certain amounts to subscribe to credit monitoring services or similar methods of reviewing their credit reports.

### *Respondeat Superior Liability*

48. A significant portion of Hunt's conduct, as set forth above, was committed within the time and space limits of his agency relationship with his principal, Defendant DNR.

49. Hunt's conduct, as set forth above, was incidental to, or of the same general nature as, the responsibilities he was authorized to perform by Defendant DNR.

50. Hunt's conduct, as set forth above, was foreseeable from the nature of employment.

51. Defendant DNR is therefore liable to Plaintiffs through the doctrine of *respondeat superior* for Hunt's intentional and negligent acts, errors, and omissions described above in violation of state and federal law.

## CLASS ACTION ALLEGATIONS

52. Under Fed. R. Civ. P. 23, Plaintiffs bring this action in their individual capacity and on behalf of :

> All individuals about whom Defendant Hunt, and or others during their period of employment with the DNR, obtained, accessed, viewed, used, collected, stored, or disseminated personal, confidential, private, and/or highly restricted information, as designated by 18 U.S.C. § 2721 and Minn. Stat. § 13 from Defendant DPS, for a purpose other than the administration and management of DNR programs.

53. The class is so numerous that joinder of all members is impracticable.  The exact number of class members is unknown at this time but, upon information and belief, is over 5,000 persons.

54. There are common questions of law and fact that predominate over any question affecting the Plaintiffs or any individual class member.  The questions include, but are not limited to:

   a.  Whether Hunt and/or others accessed, obtained, viewed, disclosed or otherwise used class members' Private Information contained in the DVS database for impermissible purposes while employed by the DNR;

   b.  Whether the purposes for which Defendant DNR and Hunt obtained, used, collected, stored, and disseminated individuals' personal, confidential, private, and highly restricted information was necessary for the administration and management of DNR programs;

   c.  Whether Hunt's and/or others' actions constituted an invasion of class members' privacy;

   d.  Whether Hunt's and/or others' actions constituted unreasonable searches;

   e.  Whether Defendants' violations of federal and state privacy laws were willful;

   f.  Whether the DNR and DPS Defendants were aware of Hunt's and/or others' improper conduct but failed to take appropriate steps to stop him/them;

g.  Whether the DNR and DPS Defendants did not take appropriate steps to
    safeguard class members' Private Information contained in the DVS
    database;

h.  Whether the DNR Defendants and DPS Defendants are vicariously liable
    for Hunt's and/or others' conduct;

i.  Whether all individuals in the Class are entitled to damages that include the
    cost of credit monitoring services as a result of their increased risk of
    identity theft;

j.  Whether class members are entitled to liquidated damages not less than
    $2,500 for each illegal access, use, or disclosure of their personal,
    confidential, private, and highly restricted information under 18 U.S.C.
    §2724(b)(1);

k.  Whether class members are entitled to punitive damages; and

l.  Whether class members are entitled to reasonable attorneys' fees and costs.

55. Plaintiffs' claims are typical of the claims of the putative class members in that
    they all emanate from the same set of operative facts as detailed in this Complaint,
    and are based on the same legal theories.

56. Plaintiffs will fairly and adequately protect the interest of the class. Plaintiffs have
    no interests that are antagonistic to the interests of the putative class members.
    Furthermore, Plaintiffs have retained the undersigned counsel who have extensive
    experience litigating class actions, as well as experience in cases involving civil
    rights, and data privacy issues.  The undersigned firms will commit the necessary

resources to the litigation of the claims in this Complaint.  Plaintiffs and their counsel will vigorously prosecute this case and will fairly and adequately represent the interests of the class.

57. This case is certifiable as a class under Federal Rule of Civil Procedure 23(b)(3) since common issues of fact and law predominate over any individual issues. Furthermore, a class action is a superior method for the fair and efficient adjudication of this action.  A class action will obviate the need for potentially over 5,000 individual actions and will conserve judicial resources.  Class members' interest in individually controlling the prosecution of their own separate claims against Defendants is small.  Furthermore, individual litigation could lead to contradictory and inconsistent results, the possibility of a race to the courthouse and the potential for unequal allocation of monetary recovery among plaintiffs.

58. The identities of the class members are easily ascertained and can be obtained from Defendants' records.  The DNR and DPS have already identified at least several thousand class members as evidenced by the letters Plaintiffs and the class have received informing them that their private information was accessed by Hunt. Furthermore, the DNR and DPS have the ability to identify the specifics of the illegal data access, including the number of times the data was accessed, the dates and times of access, and which employee viewed the information.

59. The class claims asserted in this Complaint are also alternatively or additionally certifiable as a class action under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2) since (a) the prosecution of separate actions by thousands of individual

class members would create a risk of inconsistent or varying adjudications with

respect to individual class members, thus establishing incompatible standards of

conduct for Defendants; (b) the prosecution of separate actions by individual class

members would also create the risk of adjudications with respect to them that

would, as a practical matter, be dispositive of the interest of the other class

members who are not a party to such adjudications and would substantially impair

or impede the ability of such non-party class members to protect their interests;

and (c) Defendants have acted or refused to act on grounds generally applicable to

the entire class, thereby making appropriate final declaratory and injunctive relief

with respect to the class as a whole.

## COUNT I
## VIOLATIONS OF THE DRIVERS PRIVACY PROTECTION ACT
### (Against All Defendants Except State Agencies)

60. Plaintiffs restate the previous paragraphs as though fully incorporated herein.

61. At no point did Plaintiffs or the class members give Hunt and/or others consent to

view their private driver information.

62. Under the DPPA, it is unlawful to obtain, disclose, or use driver information

without a legitimate government purpose. 18 U.S.C. § 2724(a).

63. As detailed above, Hunt and/or others willfully and recklessly obtained Plaintiffs'

and class members' driver information without a legitimate government purpose.

64. Defendant DNR and DPS Commissioners, by act or omission, were complicit in

Hunt's conduct.

65. The acts and omissions detailed in this Complaint constitute multiple violations of the DPPA.

66. The DPPA allows persons to bring civil actions to enforce their rights under the statute. *Id.*

67. Defendants are liable to Plaintiffs and the class for actual damages, liquidated damages of not less than $2,500, punitive damages, and reasonable attorney fees and litigation costs under the DPPA. *Id.*

**COUNT II**
**VIOLATIONS OF 42 U.S.C. § 1983**
**(Against John Hunt)**

68. Plaintiffs restate the previous paragraphs as though fully incorporated herein.

69. The Fourth Amendment to the U.S. Constitution bars unreasonable searches.

70. Hunt's conduct and/or the conduct of others, as detailed above, constituted an unreasonable search.

71. The DPPA clearly establishes that obtaining a person's private driver information without a legitimate purpose violates the Fourth Amendment.

72. Defendant Hunt, acting under color of state law, knew that his actions deprived Plaintiffs and the class of their rights under the DPPA.

73. Defendant Hunt deprived Plaintiffs and the class of their rights maliciously and with reckless disregard for whether Plaintiffs' and class members' rights would be violated by his actions. As a direct and proximate result of Defendant Hunt's actions, Plaintiffs have suffered harm.

74. Punitive damages are available against Defendant Hunt for his reckless and callous disregard for Plaintiffs' and class members' rights and his intentional violations of federal law.

75. Plaintiffs and the class are entitled to recover their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT III
## VIOLATIONS OF 42 U.S.C. § 1983
**(Against Defendants Landwehr, Holsten, Dohman, Campion, Defendants DNR Does and Defendants DPS Does)**

76. Plaintiffs restate the previous paragraphs as though fully incorporated herein.

77. Defendant Hunt's misconduct reflects a custom and/or policy of sanctioning, permitting, encouraging, provoking, and/or allowing invasions of citizens' DPPA privacy rights that operated throughout Defendant DPS and Defendant DNR.

78. The acts and omissions of Defendants Landwehr, Holsten, Dohman, and Campion, Defendants DNR Does, and Defendants DPS Does were the direct cause of the custom or policy permitting violations of citizens' DPPA privacy rights that operated throughout Defendant DPS and Defendant DNR.

79. The lack of monitoring regarding records acquisition practices, and the failure to take action to stop or prevent these practices, demonstrate the state of mind of Defendants Landwehr, Holsten, Dohman, and Campion, Defendants DNR Does, and Defendant DPS Does.

80. These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and

persons, including Plaintiffs and class members, whose information has been

unlawfully obtained, used, collected, stored, disclosed, and disseminated.

81. As a direct and proximate result of the acts and omissions of Defendants

Landwehr, Holsten, Dohman, and Campion, Defendants DNR Does, and

Defendants DPS Does, Plaintiffs and class members have suffered actual damages.

82. Punitive damages are available against Defendants Landwehr, Holsten, Dohman,

and Campion, Defendants DNR Does, and Defendants DPS Does for their willful

indifference to Plaintiffs' and class members' rights.

83. Plaintiffs and class members are entitled to recover their costs, including

reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV
### INVASION OF PRIVACY
**(Against All Defendants)**

84. Plaintiffs restate the previous paragraphs as though fully incorporated herein.

85. Hunt intentionally and/or negligently interfered, physically or otherwise, with the

solitude, seclusion, and private concerns or affairs of Plaintiffs by unlawfully

accessing and viewing their Private Information.

86. Plaintiffs and the class had a reasonable expectation of privacy with respect to

their Private Information that Hunt and/or others accessed and used. This Private

Information includes facts about Plaintiffs' and class members' private lives and is

specifically protected by federal and state statutes.

87. Hunt's conduct in accessing and viewing the Private Information of Plaintiffs and the class resulted in an intrusion and invasion of privacy which occurred in a way that would be highly offensive to a reasonable person in Plaintiffs' position.

88. As a result of such intrusion and invasion of privacy, Plaintiffs and class members suffered harm and are entitled to actual damages in an amount to be determined at trial.

<u>COUNT V</u>
**VIOLATIONS OF THE MINNESOTA GOVERNMENT DATA PRACTICES ACT ("MGDPA"), Minn. Stat. § 13.01, *et. seq.* (Against All Defendants)**

89. Plaintiffs restate the previous paragraphs as though fully incorporated herein.

90. The foregoing acts and omissions of Defendant Hunt, Defendant DNR, Defendant DPS, Defendants DNR Does, Defendants DPS Does, Defendants Landwehr, Holsten, Dohman, and Campion constituted violations of the MGDPA.

91. Defendant Hunt violated Minn. Stat. § 13.05 subd. 3 by collecting, storing, and using Plaintiffs' private and confidential data from Defendant DPS in a manner not necessary for the administration and management of Defendant DNR's programs.

92. Defendant DNR is vicariously liable for Defendant Hunt's violations of Minn. Stat. § 13.05 subd. 3 and Minn. Stat. § 13.03 subd. 3(f) because Defendant Hunt collected, used and stored Plaintiffs' and class members' private data when acting as the designated agent of Defendant DNR in charge of government data systems and requests for government data by third parties.

93. Defendant Landwehr violated Minn. Stat. § 13.05 subd. 5 by failing to establish appropriate security safeguards for Defendant DNR to protect all government data on individuals.

94. Defendant Holsten violated Minn. Stat. § 13.05 subd. 5 by failing to establish appropriate security safeguards for Defendant DNR to protect all government data on individuals.

95. Defendant DNR is vicariously liable for Defendant Landwehr's and Defendant Holsten's violations of Minn. Stat. § 13.05 subd. 5 because Defendant Landwehr's and Defendant Holsten's failures to establish appropriate security safeguards occurred within the scope of their employment and the statutory authority assigned to them by Minn. Stat. § 13.02 subd. 16(a) and Minn. Admin. R. § 1205.0200, subp. 13.

96. Defendant Dohman violated Minn. Stat. § 13.05 subd. 5 by failing to establish appropriate security safeguards for Defendant DPS to protect all government data on individuals.

97. Defendant Campion violated Minn. Stat. § 13.05 subd. 5 by failing to establish appropriate security safeguards for Defendant DPS to protect all government data on individuals.

98. Defendant DPS is vicariously liable for Defendant Dohman's and Defendant Campion's violations of Minn. Stat. § 13.05 subd. 5 because Defendant Dohman's and Defendant Campion's failures to establish appropriate security safeguards occurred within the scope of their employment and the statutory authority assigned

to them by Minn. Stat. § 13.02 subd. 16(a) and Minn. Admin. R. § 1205.0200 subp. 13.

99. The foregoing acts and omissions of Defendant Hunt, Defendant DNR, Defendant DPS, and Defendants Landwehr, Holsten, Dohman, and Campion were willful.

100.   As a result of the foregoing acts and omissions of Defendant Hunt, Defendant DNR, Defendant DPS, and Defendants Landwehr, Holsten, Dohman, and Campion, Plaintiffs have suffered actual damages including but not limited to damages in the form of out-of-pocket costs for credit monitoring services.

101.   Defendant DNR, Defendant DPS, and Defendants Landwehr, Holsten, Dohman, and Campion are subject to a civil lawsuit in this Court as a result of the Minnesota legislature's waiver at Minn. Stat. § 13.08 subd. 1 of any immunity that may have otherwise applied.

102.   Defendant DNR, Defendant DPS, and Defendants Landwehr, Holsten, Dohman, and Campion are liable to Plaintiffs and the class for damages, exemplary damages, and reasonable attorneys' fees and litigation costs.

**JURY DEMAND**

103.   Plaintiffs demand a jury trial.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

   1.   Enter judgment in Plaintiffs' favor on their claims against Defendants in an amount to be determined at trial;

2.      Award Plaintiffs and the class damages to compensate them for the injuries they suffered as a result of Defendants' unlawful conduct in an amount to be determined at trial;

3.      Award Plaintiffs and the class liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2724(b)(1);

4.      Award Plaintiffs and the class punitive damages with respect to their claims arising under federal law under 18 U.S.C. § 2724(b)(2) and *Smith v. Wade,* 461 U.S. 30 (1983);

5.      Award Plaintiffs and the class exemplary damages of between $1,000 and $15,000 pursuant to Minn. Stat. § 13.08, subd. 1;

6.      Grant Plaintiffs leave to amend the Complaint to include a claim for punitive damages with respect to their state law claims;

7.      Award Plaintiffs reasonable expenses incurred in this litigation, including attorney and expert fees under 42 U.S.C. § 1988 and 18 U.S.C. § 2724(b)(3);

8.      Award Plaintiffs and the class all other statutory relief they are entitled to;

9.      Declare that the conduct set forth above is unlawful under the DPPA;

10.     Enjoin Defendants from accessing and viewing Private Information in violation of federal and state laws;

11.     Grant Plaintiffs and the class all appropriate prospective relief;

12.     Certify the proposed class of persons harmed by Defendants' conduct; and

13.    Appoint Plaintiffs as Class Representatives and appoint the undersigned counsel as Class Counsel.

Grant any other relief the Court deems just and equitable.

Dated:  February 25, 2013                         Respectfully Submitted,

**CROWDER, TESKE, KATZ & MICKO, PLLP**

By:  s/ Douglas L. Micko
Vildan A. Teske (MN Bar No. 241404)
Douglas L. Micko (MN Bar No. 299364)
Marisa C. Katz (MN Bar No. 389709)
222 South Ninth Street, Suite 3210
Minneapolis, Minnesota  55402
Telephone: (612) 746-1558
micko@crowderteske.com
teske@crowderteske.com
katz@crowderteske.com

**LAW OFFICES OF JOSHUA R. WILLIAMS**
Joshua R. Williams (#389118)
Tim M. Phillips (#390907)
3249 Hennepin Avenue S, Suite 216
Minneapolis, Minnesota 55408
(612) 486-5540
(612) 605-1944 Facsimile
jwilliams@jrwilliamslaw.com
tphillips@jrwilliamslaw.com

**ATTORNEYS FOR PLAINTIFFS AND THE CLASS**