# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jennifer KIMINSKI, Paul KIMINSKI, Rosemary STIFF, Kathryn Susan Barton and Eugene Barton as legal guardians for Kathryn Sarah BARTON, Katherine SAPP, Holly ESTEY, Angela KREBSBACH, Traci SEIDEL, Brenda WELCH, and Ken WILSON, Individually and On Behalf of all Others Similarly Situated | **Case No. 13-cv-00185 (JNE/TNL)** |

                          Plaintiffs,

     v.

John HUNT, in his individual  capacity as an employee of the Minnesota Department of Natural Resources; Keith PARKER, in his individual capacity as Regional Director of the Minnesota Department of Natural Resources; Robert MAKI, in his individual capacity as Chief Information Officer of the Minnesota Department of Natural Resources; Steve LIME, in his individual capacity as Data and Applications Manager of the Minnesota Department of Natural Resources; Charlie REGNIER, in his individual capacity as Computer Hardware and Software Procurement Manager of the Minnesota Department  of Natural Resources; Stan GRUSKA, in his individual capacity as Network Services Manager for the Minnesota Department of Natural Resources; John and Jane DOE Employees of the Department of Natural Resources, in their individual capacities; Sheila DEYO, in her individual capacity as Minnesota Department of Natural Resources Data Practices Compliance Commissioner; Tom LANDWEHR, in his individual and official capacities as Commissioner of the Department of Natural

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Resources; Mark HOLSTEN, in his individual
capacity as Commissioner of the Department
of Natural Resources; Michael CAMPION, in
his individual capacity as Commissioner of
the Minnesota Department of Public Safety;
and Ramona DOHMAN, in her individual and
official capacities as Commissioner of the
Minnesota Department of Public Safety; John
and Jane DOE Employees of the Minnesota
Department of Public Safety in their
individual capacities as officers, supervisors,
staff, employees, independent contractors or
agents of the Minnesota Department of Public
Safety,

Defendants.

---

Plaintiffs bring this action, on behalf of themselves and all others similarly

situated, for violations of federal law against the above-named defendants and hereby

state and allege as follows:

## INTRODUCTION

1.     The United States Supreme Court long has recognized privacy as a

fundamental constitutional right protected by the U.S. Constitution and entitled to

protection from encroachment by the States, both under the Fourth and Fourteenth

Amendments and under various protections extended to the people of the United States

by the Bill of Rights.

2.     To enforce those rights, the legislative branch of our federal government

has adopted a strict approach to the protection of privacy interests, particularly in the past

twenty years.

3.     Recognizing that many government personnel, among others, have the ability to access any person's private information, especially that information retained by the State in connection with a driver's license and other state identification records, Congress passed legislation commonly known as the Driver's Privacy Protection Act of 1994 ("DPPA") to safeguard this information.

4.     Defendants have invaded Plaintiffs' privacy and violated Plaintiffs' legal rights, as set forth below.

## JURISDICTION

5.     This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment of the United States Constitution, 28 U.S.C. §§ 1331 and 1343(a)(3), and the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq*.  The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

6.     Venue is proper because the acts or omissions giving rise to the claims occurred in Minnesota, and Defendants reside in Minnesota and/or are Minnesota public officials.

## PARTIES

7.     Jennifer Kiminski is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

8.     Paul Kiminski is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

3

9.      Rosemary Stiff is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

10.     Plaintiffs Kathryn Susan Barton and Eugene Barton are acting in their capacity as legal guardians for Kathryn Sarah Barton who is an adult female.  All three are, and were at all times material herein, citizens of the United States and residents of the State of Minnesota.

11.     Plaintiff Katherine Ann Sapp is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

12.      Plaintiff Holly Estey is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

13.     Plaintiff Angela Krebsbach is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

14.     Plaintiff Traci Seidel is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

15.     Plaintiff Brenda Welch is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

16.     Plaintiff Ken Wilson is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

17.     Defendant John Hunt ("Hunt"), upon information and belief was, at all times material herein, an employee of the Department of Natural Resources ("DNR") holding the rank of Captain until terminated from his employment.

18.     Hunt is a citizen of the United States and a resident of the State of Minnesota, and at all relevant times he was duly appointed and acting in his capacity as an employee of the DNR, and upon information and belief, having duties to safeguard and monitor the DPS Database as used by employees and officers of the DNR.  He is being sued in his individual capacity.

19.     Defendant Keith Parker ("Parker"), upon information and belief was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as Regional Director of the Central Region for the Minnesota Department of Natural Resources, and is being sued in his individual capacity.

16.      Defendant Robert Maki ("Maki"), upon information and belief was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as Chief Information Officer of the Minnesota Department of Natural Resources and is being sued in his individual capacity.

17.     Defendant Steve Lime ("Lime"), upon information and belief was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as Data and Applications Manager of the Minnesota Department of Natural Resources and is being sued in his individual capacity.

18.     Defendant Charlie Regnier ("Regnier"), upon information and belief was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as Computer Hardware and Software Procurement Manager of the Minnesota Department of Natural Resources and is being sued in his individual capacity.

19.     Defendant Stan Gruska ("Gruska"), upon information and belief was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as Network Services Manager of the Minnesota Department of Natural Resources and is being sued in his individual capacity.

20.     Defendant Tom Landwehr ("Landwehr"), upon information and belief was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.   Landwehr is, and was during part of the relevant time period, duly appointed and acting as Commissioner of the Minnesota Department of Natural Resources, and is being sued in his individual capacity and, for purposes of prospective injunctive relief only, in his official capacity.  Plaintiffs seek prospective relief to bring the actions and procedures of Commissioner Landwehr in line with the policy of the State of Minnesota, which is to follow the mandates of the DPPA and to enforce it. Such relief should, if Landwehr leaves office for any reason, continue to apply to the office of DNR Commissioner.

21.     Defendant Mark Holsten ("Holsten"), upon information and belief was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.  Holsten was during part of the relevant time period duly appointed and acting as former Commissioner of the Minnesota Department of Natural Resources, and is being sued in his individual capacity.

22.     Defendant Sheila Deyo ("Deyo"), upon information and belief was, at all times material herein, a citizen of the United States and a resident of the State of

Minnesota, duly appointed and acting in her individual capacity as DNR Data Practices Compliance Commissioner of the Minnesota Department of Natural Resources.

23.     John and Jane Doe employees of the Minnesota Department of Natural Resources, upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting in their individual capacities as officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Natural Resources ("DNR Does").

24.     Defendants Parker, Maki, Lime, Regnier, Deyo, and Gruska, and any other individuals with supervisory authority over Defendant Hunt, including DNR Does, shall hereinafter be referred to as the "DNR Supervisors."

25.     Defendant Michael Campion ("Campion"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.  Campion was during part of the relevant time period duly appointed and acting as the Commissioner of the Minnesota Department of Public Safety, and is being sued in his individual capacity.

26.     Defendant Ramona Dohman ("Dohman"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota.  Dohman is, and was during part of the relevant time period, duly appointed and as the Commissioner of the Minnesota Department of Public Safety, and is being sued in her individual capacity, and for purposes of prospective injunctive relief only, in her official capacity. Plaintiffs seek prospective relief to bring the actions and procedures of Commissioner Dohman in line with the policy of the State of Minnesota,

7

which is to follow the mandates of the DPPA and to enforce it.  Such relief should, if Dohman leaves office for any reason, continue to apply to the office of DPS Commissioner.

27.    John and Jane Doe employees of the Minnesota Department of Public Safety, upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed as officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety, and each is being sued in his or her individual capacities.

28.    Plaintiffs refer to John and Jane Doe officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety who created, installed, monitored, regulated, coded, enforced, supervised, maintained, oversaw, updated, or otherwise worked on the Department of Vehicle Services' ("DVS") database or Bureau of Criminal Apprehension ("BCA") database, each of which contained Plaintiffs' and class members' private driver's license information (collectively or individually, "DPS Databases") as "Department of Public Safety Does" or "DPS Does."

29.    Dohman and Campion shall hereinafter be referred to collectively as the "DPS Commissioner Defendants" and Landwehr, Holsten, Campion and Dohman shall hereinafter be referred to collectively as the "Commissioner Defendants" or "Defendant Commissioners."

8

## GENERAL ALLEGATIONS

30.     While he was a Minnesota Department of Natural Resources employee, Hunt accessed private driver's license information of more than five thousand (5,000) individuals approximately nineteen thousand (19,000) times, without any legitimate business reason to do so.

31.     The Driver and Vehicle Services Division of the Minnesota of Public Safety ("DPS") maintains motor vehicle records on each of the named Plaintiffs and the class members.

32.     The motor vehicle records contain "personal information" and "highly restricted personal information," as defined by 18 U.S.C. § 2725 ("Private Data"), including the names, date of birth, driver's license number, address, driver's license photo, weight, height, and eye color of Plaintiffs and the class members, and perhaps including their medical and disability information.

33.     Plaintiffs and the class members all provided the Private Data to DPS, including their addresses, color photographs, dates of birth, weights, heights, and eye colors for the purposes of acquiring and utilizing a Minnesota State driver's license.

34.     The Private Data is protected from access, use, and disclosure by 18 U.S.C. § 2721 *et seq.*, the Drivers Privacy Protection Act.

35.     Upon information and belief, over a period of time prior to January 14, 2013, Hunt engaged in the unauthorized acquisition of Private Data of over five thousand (5,000) individuals.

36.     Upon information and belief, Hunt made approximately nineteen thousand (19,000) unauthorized queries of DVS records over nearly five years.

37.     Upon information and belief, a considerable number of these queries occurred even when off duty, as the DPS system provides that any employee possessing a password can run a query from any computer at any time; but the means of accessing the database and the database itself are within the control of the DPS.

38.     Upon information and belief, Hunt was the administrative manager of DNR's enforcement division.

39.     Upon information and belief, Hunt was among those in charge of open records and data training at the DNR.

40.     Upon information and belief, Hunt handled public requests for records as a data compliance officer at the DNR.

41.     Upon information and belief, Hunt made several unauthorized accesses of Private Data immediately upon leaving a seminar on law enforcement data practices.

42.     At no time did any of Plaintiffs and class members provide their consent for Hunt, DNR Supervisors, DPS Does or Commissioner Defendants to obtain, disclose or use their Private Data for any non-authorized purpose.

43.     Upon information and belief, Hunt was terminated by the DNR.

44.     On or about January 14, 2013, as a result of Hunt's conduct, the DNR sent out approximately five thousand (5,000) data-breach letters informing individuals of Defendant Hunt's "unauthorized viewing of private data from your driving and/or motor vehicle records."  (Sample Letter attached as Exhibit A).

45.     On information and belief, most of the approximately nineteen thousand accesses (19,000) of the five thousand (5,000) individuals were obtained for purposes not permitted under the DPPA.  (*See* Exhibit A).

46.     The DNR has admitted that the accesses were "inappropriate" and "unauthorized" in statements contained in the letters sent on or about January 14, 2013.

47.     DNR has admitted that the accesses were "unauthorized" and in a press release issued on January 15, 2013, admitted that "a DNR employee inappropriately accessed driving license and motor vehicle records without authorization to do so."

48.     The DNR, via the social networking site "Twitter," released a "tweet" stating that the accesses of driver's license data was "unauthorized."

49.     On or about January 16, 2013, DNR spokesperson Chris Niskanen stated that "[i]t became pretty apparent that there was no business-related reason for (the former employee) to be doing this."

50.     Upon information and belief, most of the individuals whose Private Data was accessed were women.

51.     Upon information and belief, individuals whose Private Data was accessed included news reporters for the *St. Paul Pioneer Press*, news anchors for various television news outlets, a city attorney, another reporter's spouse, a pair of public defenders, and multiple Dakota County court employees.

52.     Upon information and belief, Hunt, a Captain with the DNR, knew that his accesses of Private Data was unauthorized.

53.     Upon information and belief, the DNR Supervisors, DPS Does and
Commissioner Defendants knew or should have known of and/or recklessly disregarded
Hunt's actions.

54.     Upon information and belief, the DNR Supervisors, DPS Does and
Commissioner Defendants knew or should have known and/or recklessly disregarded that
Hunt's actions were pervasive and widespread, and that they violated federal and state
law.

55.     Hunt's conduct in obtaining, disclosing, or using the Private Data was for
purposes not permitted under the DPPA and was knowingly done and in willful and
reckless disregard of federal law.

56.     Each unauthorized access of Plaintiffs' and class members' Private Data,
made while acting under color of state law, violated Plaintiffs' and class members'
federal civil rights and constituted behavior prohibited by federal statute, Minnesota
statute, common law, as well as agency and departmental regulations prohibiting some or
all of the conduct engaged in by Defendants in this case.

57.     Defendant DNR Supervisors, DPS Does and Commissioner Defendants
failed to put into place systems and/or procedures to ensure Plaintiffs' and class
members' Private Data would be protected and would not be subject to misuse. The DNR
Supervisors, DPS and Commissioner Defendants could have taken appropriate security
safeguards in regard to Plaintiffs' and class members' Private Data, but failed to do so.

58.     Any attempts at safeguards put in place by Defendant DNR Supervisors,
DPS Does and Commissioner Defendants to prevent Hunt's illegal access and viewing of

Plaintiffs' and class members' Private Data were inadequate to protect this private information from being unlawfully accessed.

59.     Defendants' conduct, as described above, does result in an increased risk of identity theft.  Defendants' conduct also caused Plaintiffs and class members to lose at least a portion of the economic value of their private information.

60.     It is the policy of the State of Minnesota to follow the DPPA.

61.     In failing to properly implement, maintain and monitor the DPS Databases, the DPS Commissioners failed to follow Minnesota's policy.

62.     Many viable methods were and are available to prevent this illegal accessing of private information.

63.     In so doing, Defendants violated the United States Constitution and the DPPA, and are liable under 42 U.S.C. § 1983.

64.     Defendants have damaged Plaintiffs' and class members' lives by these violations.

65.     Plaintiffs and class members are entitled to a determination that their rights have been violated, to an order enjoining further violations, and to monetary damages for these violations of federal law.

### COUNT I – Violations of the Drivers' Privacy Protection Act
### 18 U.S.C. § 2721, *et seq.*
### (*Against All Defendants in Their Individual Capacities*)

66.     Plaintiffs reaffirm and reallege the allegations in each above numbered Paragraph.

67.     Plaintiffs and class members provided personal information to the DPS including their address, color photograph, date of birth, weight, height and eye color, and in some instances, their medical and/or disability information, for the purpose of acquiring and utilizing a State of Minnesota driver's license.

68.     The DVS database also maintained Plaintiffs' and class members' driving records.

69.     At no time did Plaintiffs or class members provide their consent for Defendant Hunt, the DNR Supervisors, the DPS Does or the Commissioner Defendants to disclose to anyone who would use their private data for an impermissible purpose, or to use their private data for an impermissible purpose, or for any of DNR Supervisors, DPS Does, or the Defendant Commissioners, to allow Defendant Hunt to obtain, disclose or use, Plaintiffs' and class members' Private Data for anything but permissible purposes.

70.     Intentionally accessing, obtaining, disclosing or using driver's license information without an authorized purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

71.     The DPPA provides redress for violations of a person's protected interest in the privacy of their motor vehicle records and the identifying information therein.

72.     The Defendants, each of them, have invaded Plaintiffs' and class members' legally protected interest under the DPPA.

73.     Upon information and belief, Defendant Hunt knowingly obtained, disclosed, or used Plaintiffs and the class members' Private Data from a motor vehicle record, for a purpose not permitted under the DPPA.  18 U.S.C. § 2724(a)

14

74.     None of the Defendants' activities fell within the DPPA's permitted exceptions for procurement of Plaintiffs' or class members' private information.

75.     Hunt knew that his action related to Plaintiffs' and the class members' personal information was for an impermissible purpose and in violation of the DPPA.

76.     All DNR Supervisors, DPS Does and Defendant Commissioners knew or should have known and/or recklessly disregarded that Hunt was making these illegal accesses.

77.     By the actions described above, Hunt was acting within the scope of his employment when he obtained, disclosed, or used the Plaintiffs' and class members' Private Data from the DVS database for an impermissible purpose.

78.     The DNR Supervisors, DPS Does and Defendant Commissioners knowingly or with reckless disregard authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Plaintiffs' and class members' private personal information by Defendant Hunt.

79.     Their actions, particularly those of the DPS Commissioners Campion and Dohman, and DNR Commissioner Landwehr, constitute knowing disclosures of the personal information of Plaintiffs and others under the DPPA.

80.     The actions alleged herein show that DPS Commissioners Campion and Dohman and DNR Commissioner Landwehr knowingly disclosed the information by granting Hunt access, in violation of the DPPA, whether or not they knew that Hunt accessed and obtained information unlawfully.

81.    DPS Commissioners Campion and Dohman, and DNR Commissioner Landwehr, have been involved with law enforcement for many years.

82.    Commissioner Dohman has been a law enforcement officer for thirty years, having formerly served as police chief of the City of Maple Grove from 2001 until her appointment as DPS Commissioner in March 2011.

83.    Before becoming Chief of Police of the Maple Grove Police Department she was an investigator, patrol officer, sergeant and captain of the Maple Grove Police Department; prior to that time a patrol officer of the City of Glencoe and of the City of Marshall, Minnesota.

84.    Dohman also served as president of the Minnesota Chiefs of Police Association.

85.    In other lawsuits and potential lawsuits, DPS audits have revealed that numerous officers on the Maple Grove Police Department in particular have made impermissible accesses, including during Dohman's tenure as Maple Grove Police Chief.

86.    Plaintiffs' counsel has been informed by those familiar with the problems of police departments that misuse of private information is the main complaint of most chiefs and police human resources personnel.

87.    Former Commissioner Michael Campion served from July 2004 until March 2011.  Prior to his appointment as DPS Commissioner he was supervisor of the Bureau of Criminal Apprehension ("BCA"), which also maintains a driver's license database.

88.    Prior to that position he was a special agent at the BCA.

16

89.     It was during his tenure that the DPS Database was largely developed in its current format.

90.     DNR Commissioner Landwehr was appointed in January 2011, but was with the DNR for over 17 years, and stated publicly that he had been in training for this job for 30 years.

91.     Former DNR Commissioner Mark Holsten served as DNR Commissioner from 2006 to 2011, and was prior to his appointment Deputy DNR Commissioner from 2003 to his appointment in 2006; prior to that time was a state legislator from approximately 1993 until his appointment in 2003.  He was and is well versed in Minnesota law and the workings of the DNR and its legal accountability.

92.     On information and belief, misuse of the DPS Database was rampant at the DNR, and this misuse was well known to DNR Commissioners Landwehr and Holsten.

93.     On information and belief, misuse of the DPS Database has been well-known to the Commissioner Defendants.  At a hearing at which Commissioner Dohman testified, the testimony of the Legislative Auditor revealed that at least 50% of law enforcement officers are misusing the DPS Database by accessing, disclosing, and/or using the driver license personal information for an impermissible purpose.

94.     On information and belief, the Commissioner Defendants knew this, and knowingly disclosed the information in part by (a) failing to safeguard and monitor the database despite knowing of its rampant misuse, (b) willfully refusing to correct the misuses, or (c) both failing to monitor and refusing to correct the abuse and misuse of the system.  Commissioner Dohman's practices and procedures that result in knowing

disclosure of private information are directly contrary to the policy of the State of Minnesota.

95.    Commissioner Dohman has been unresponsive to the need to protect private information until the Legislative Auditor's report focused public attention on the matter, requiring some response.

96.    Experts in the field of police training report that the primary complaint of many police departments is that law enforcement personnel misuse private information. This is an established, well-known, and pervasive problem with law enforcement that Commissioner Defendants are unwilling to properly address.

97.    Defendant Hunt used the DNR's computers, passwords, and passcodes to obtain the Plaintiffs' and class members' Private Data.

98.    The DNR Supervisors, DPS Does and Defendant Commissioners are each vicariously liable for the acts of Defendant Hunt.

99.    Plaintiffs and class members have suffered harm because their private information has been obtained unlawfully.  Plaintiffs and class members suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of DNR personnel who obtained it without a legitimate purpose.  This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

100.    The Defendants each willfully and recklessly disregarded the law, entitling Plaintiffs and class members to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as

set forth in Minn. Stat. § 549.20.  Plaintiffs and class members are entitled to actual

damages, punitive damages, reasonable attorneys' fees and other litigation costs

reasonably incurred, and such other preliminary and equitable relief as the court

determines to be appropriate.  18 U.S.C. § 2724(b).

101.    In addition, under the DPPA, Plaintiffs and class members are each entitled

to a baseline liquidated damages award of at least $2,500 for each violation of the DPPA.

18 U.S.C. § 2721(b)(1).

## COUNT II – Violation of 42 U.S.C. § 1983
### *(Against Defendant Hunt Only)*

102.    Plaintiffs reaffirm and reallege the allegations in each above numbered

Paragraph.

103.    At no time did the Plaintiffs or class members behave in a manner that

would provide any legal justification for Defendant Hunt to invade their privacy.

104.    The DPPA establishes that obtaining an individual's driver's license

information without a legitimate purpose constituted an illegal search under the meaning

of the Fourth Amendment to the Bill of Rights.

105.    Hunt's viewing of Plaintiffs' and class members' Private Data was

unauthorized, unjustified, and excessive, and violates the Fourth Amendment, the laws of

the United States, and the laws of the State of Minnesota.

106.    Hunt's actions, which were under color of state law, violated and deprived

Plaintiffs and class members of their rights to be free from an unconstitutional search.

107.    The acts of Defendant Hunt, acting under the color of state law, constituted

an invasion or repeated invasions of Plaintiffs' and class members' clearly established

privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the

United States Constitution, the laws of the United States, including the DPPA, and the

laws of the State of Minnesota.

108.    The DPPA creates an individual right to privacy in a person's driver's

license information, thereby prohibiting unauthorized accessing of all persons'

information, including Plaintiffs' and class members' information.

109.    Hunt, acting under color of state law, knew that his actions violated and

deprived Plaintiffs and class members of their clearly established statutory rights under

the DPPA.

110.    Defendant Hunt deprived Plaintiffs and class members of their federal

statutory rights and civil rights maliciously or by acting with reckless disregard for

whether Plaintiffs' and class members' rights would be violated by his actions.

111.    Defendant Hunt was deliberately indifferent to the Plaintiffs' and class

members' statutory and civil right to be free from illegal searches, invasions of privacy

and the unauthorized accessing of their Private Data

112.    As a direct and proximate result of Defendant Hunt's acts and omissions,

Plaintiffs and class members have suffered actual damages.

113.    Punitive damages are available against Defendant Hunt for his reckless and

callous disregard for Plaintiffs' and class members' rights and his intentional violations

of the federal law, and are hereby claimed as a matter of federal common law under

*Smith v. Wade*, 461 U.S. 30 (1983).

114.    Plaintiffs and class members are entitled to recovery of their costs,

including reasonable attorney fees, under 42 U.S.C. § 1988.

### COUNT III – Violation of 42 U.S.C. § 1983
*(Against DNR Supervisors, DNR Commissioners and DNR Does in their individual capacities)*

115.    Plaintiffs reaffirm and reallege the allegations in each above numbered

Paragraph.

116.    Defendant Hunt's numerous accesses of Plaintiffs' and class members

Private Data is not unique, but one example of how governmental entities frequently and

customarily violate the DPPA by accessing individuals' private information without any

legitimate or permitted reason for doing so.

117.    The information presented in this Complaint, other information to be

presented at trial, and evidence reasonably likely to be determined after full discovery

demonstrate that the improper access of citizens' driver's license information by the

DNR's personnel for their own personal and private uses, obtained by accessing that

information through the computerized information storage system kept by the state for

official purposes only, is a custom or practice well known to DNR Supervisors,

Commissioners and Does.

118.    These customs and practices by Hunt are at variance with the written rules

set down by the DNR, but these formal rules are widely and knowingly disregarded.

119.   Given the DNR Supervisors, DNR Does and DNR Commissioners' failure to monitor and enforce their rules, the aforementioned customs and practices are attributable to them.

120.   The DNR Supervisors, Commissioners and Does knew or should have known of this and other unlawful, improper, unjustified, and impermissible access of Private Data by Hunt.

121.   The prevalence of this custom, the lack of monitoring regarding these access practices and failure to take action to stop or prevent these practices, demonstrate the state of mind of DNR Supervisors, Commissioners, and Does.

122.   These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiffs and class members, whose information has been wrongfully accessed.

123.   The DNR Supervisors, Commissioners and Does are liable for the custom and practice of the widespread illegal access of citizens' driver's license or other state identification information.

124.   The DNR Supervisors, Commissioners and Does are liable for the failure to train, monitor, and supervise Hunt who was improperly and unlawfully accessing the private driver's license information of citizens, including Plaintiffs and class members, without a proper, lawful, permissible, justifiable purpose for doing so.

125.   This pattern of failure to train, monitor, supervise, and discipline demonstrates the state of mind of DNR Supervisors, Commissioners, and Does and a

deliberate indifference to the rights of the citizens and others whose information has been so widely accessed, including Plaintiffs and class members.

126.    Upon information and belief, no meaningful attempt has been made by the DNR Supervisors, Commissioners and Does to provide redress and assurance to the persons, including Plaintiffs and class members, whose information has been wrongfully accessed by Hunt.

127.    As a direct and proximate result of the acts and omissions of the above-named DNR Supervisors, Commissioners, and Does, Plaintiffs and class members have suffered actual damages.

128.    Punitive damages are available against DNR Supervisors, Commissioners and Does for their willful indifference to Plaintiffs' and class members' rights.

129.    Plaintiffs and class members are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV – Violation of 42 U.S.C. § 1983
### *(Against DPS Commissioners and DPS Does in their individual capacities)*

130.    Plaintiffs reaffirm and reallege the allegations in each above numbered Paragraph.

131.    Campion was Commissioner of DPS from April 2004 to February 2011.

132.    Dohman became Commissioner of DPS in March 2011 and presently serves in that role.

133.    In that capacity the DPS Commissioners and DPS Does were responsible for creating, maintaining, and providing access to the database that included Plaintiffs'

and class members' Private Data and for hiring and supervising employees who were creating, maintaining, and providing access to the said database.

134.    DPS Commissioners and DPS Does also had the ability to determine if unauthorized access was being made and to prevent such unauthorized access to the database, including of Plaintiffs' and class members' private information.

135.    The DPS Commissioners and DPS Does failed to prevent unauthorized access to the database, including Plaintiffs' and class members' private data.

136.    The actions of the DPS Commissioners and DPS Does, as alleged, violate the rights of the Plaintiffs and class members under the Fourth and Fourteenth Amendments to the United States Constitution.

137.    On information and belief, the DPS Commissioners and DPS Does created or oversaw the creation and maintenance of a database and system that was supposed to prevent unauthorized access to driver's license information.

138.    Upon information and belief, DPS Commissioners and DPS Does allowed unauthorized access of Plaintiffs' and class members' Private Data approximately nineteen thousand (19,000) times.

139.    DPS Commissioners and DPS Does have sanctioned the constitutional violations by Defendant Hunt through their failure to remedy the policy, custom and practice of allowing unfettered and unauthorized access to the database.

140.    DPS Commissioners and DPS Does have been grossly negligent in supervising subordinates responsible for implementing a database that prevents unauthorized access to private, personal information.

141.    DPS Commissioners and DPS Does have been grossly negligent in supervising subordinates responsible for proper use of the DVS database.

142.    On information and belief, DPS Commissioners and DPS Does failed to monitor and prevent unauthorized access to private, personal information even though they knew or should have known that such unconstitutional acts were occurring.

143.    DPS Commissioners and DPS Does, acting under the color of state law, were deliberately indifferent to Plaintiffs' and class members' constitutionally recognized and federal statutory rights to be free from illegal searches, invasions of privacy and the unauthorized accessing of their private driver's license information.

144.    As a direct and proximate result of the acts and omissions of the DPS Commissioners and DPS Does, Plaintiffs and class members have suffered actual damages.

145.    Punitive damages are available against DPS Commissioners and DPS Does for their reckless and callous disregard for Plaintiffs' and class members' civil rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

146.    Plaintiffs and class members are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

### COUNT V – VIOLATION OF 42 U.S.C. § 1983
*(Against DNR Commissioner Landwehr and DPS Commissioner Dohman in Their Official Capacities- Prospective Relief)*

147.    Plaintiffs reaffirm and reallege the allegations in each above numbered Paragraph.

148.    Hunt's misconduct reflects a custom and/or policy of sanctioning, permitting, encouraging, provoking, and/or allowing invasions of citizens' DPPA privacy rights that operated throughout DPS and DNR, all in violation of state policy to protect its citizens' Private Data and to enforce the DPPA and to uphold constitutionally-guaranteed privacy protections.

145.    The acts and omissions of Defendants Landwehr and Dohman were the direct cause of the custom or policy permitting violations of citizens' DPPA privacy rights that operated throughout the DPS and DNR.

146.    The lack of monitoring regarding records acquisition practices and the failure to take action to stop or prevent these practices demonstrate the state of mind of the Commissioners Landwehr and Dohman.

147.    These customs and practices further demonstrate Landwehr's and Dohman's deliberate indifference to the federal statutory and constitutional rights of citizens, including Plaintiffs and class members, whose information was unlawfully obtained, used, collected, stored, disclosed and disseminated.

148.   As a direct and proximate result of the acts and omissions of the DNR and DPS Commissioners, prospective injunctive relief is warranted permanently enjoining DNR and DPS Commissioners from allowing the unfettered and unauthorized access by its employees to view private information in violation of federal law and further requiring them to set in place policies, procedures and/or practices prohibiting the unlawful accessing, viewing, collecting, storing, disclosing and disseminating of private data in the future, as well as a mechanism to audit or monitor compliance with these procedures.

149.    Plaintiffs and class members are entitled to recover their costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## CLASS ACTION ALLEGATIONS

150.    This action is brought and may properly be maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs bring their action on behalf of themselves and all others similarly situated, as the representative members of a proposed class ("the Class") defined as follows:

> All individuals about whom Defendant Hunt, and/or others during their period of employment with the DNR, obtained, accessed, viewed, used, collected, stored, or disseminated personal, confidential, private, and/or highly restricted information, as designated by 18 U.S.C. § 2721, from Defendant DPS, for a purpose other than the administration and management of DNR programs.

151.    This putative class action (hereinafter "class action") satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23(a), as well as the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3).

### Numerosity

152.    The Class is so numerous that joinder of all members is impracticable.  The exact number of class members is unknown at this time but, upon information and belief, is over 5,000 persons.

153.    Plaintiffs believe that the members of the Class are readily identifiable from records in possession of DNR officers or officials or may be properly obtained from the entity responsible for mailing the estimated 5,000 notifications.

27

## Common Questions of Law and Fact

154.    Questions of law and fact arising out of the various violations alleged herein to Plaintiffs and others similarly situated are common to all members of the Class and predominate over any questions affecting only individual members of the Class. These questions include, but are not limited to, the following:

a.    Whether Hunt improperly accessed obtained, disclosed, and/or used class members' "personal information" and/or "highly restricted personal information" from the DPS Database while employed by the DNR;

b.    Whether Hunt's actions in accessing, obtaining, disclosing, and/or using approximately 19,000 DVS records from 5,000 individuals violated  the DPPA;

c.    Whether Hunt's actions in accessing, obtaining, disclosing, and/or using approximately 19,000 DVS records from 5,000 individuals constitutes an invasion of privacy of the Plaintiffs and the Class;

d.    Whether Plaintiffs and the Class are entitled to liquidated damages of at least $2,500 for each improper access, use or disclosure of their personal information  pursuant to 18 U.S.C. § 2724(b)(1);

e.    Whether the DNR Supervisors and Commissioner Defendants were aware of Hunt's improper conduct, as described herein, but failed to take action to stop said conduct or take any remedial action;

f.    Whether Plaintiffs and the Class are entitled to damages under 18 U.S.C. § 1983;

28

g.  Whether Plaintiffs and the Class are entitled to punitive damages under 18
U.S.C. § 2724(b)(2), federal common law, and state common law; and

h.  Whether Plaintiffs and the Class are entitled to reasonable attorneys' fees
and other litigation costs reasonably incurred pursuant to 18 U.S.C. §
2724(b)(3), 42 U.S.C. § 1988, and other laws of the United States and the
State of Minnesota.

## Typicality of Claims

155.   Plaintiffs' claims are typical of the members of the Class in that they all
emanate from the same set of operative facts as detailed in this Complaint, and are based
on the same legal theories.

## Adequacy of Representation

156.   Plaintiffs will fairly and adequately protect the interests of the Class.
Plaintiffs have no interests that are antagonistic to the interests of the putative class
members.  Furthermore, Plaintiffs have retained counsel with extensive experience
litigating class actions, as well as experience in cases involving civil rights and data
privacy issues. The undersigned firms will commit the necessary resources to litigation of
Plaintiffs' claims. Plaintiffs and their counsel will vigorously prosecute this case and will
fairly and adequately represent the interests of the Class.

## Predominance and Superiority

157.   This case is certifiable as a class under Fed. R. Civ. P. 23(b)(3) since
common issues of fact and law predominate over any individual issues.  Furthermore, a
class action is a superior method for the fair and efficient adjudication of this action. A

class action will obviate the need for potentially over 5,000 individual actions and will conserve judicial resources.  Class members' interests in individually controlling the prosecution of their own separate claims against Defendants is small. Moreover, individual litigation could lead to contradictory and inconsistent results, the possibility of a race to the courthouse and the potential for unequal allocation of monetary recovery among plaintiffs.

158.   The identities of class members are easily ascertained and can be obtained from Defendants' records. The DNR and DPS have already identified at least several thousand class members, as evidenced by the letters Plaintiffs and the class received informing them that their private information was accessed, the dates and times of access, and which employee viewed the information.

159.   The class claims asserted in this Complaint are also alternatively or additionally certifiable as a class action under Fed. R. Civ. P. 23(b)(1) and 23(b)(2) since (a) the prosecution of separate actions by thousands of individuals would create a risk of inconsistent or varying adjudications with respect to individual class members, thus establishing incompatible standards of conduct for Defendants; (b) the prosecution of separate actions by individual class members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members who are not parties to such adjudications and would substantially impair or impede the ability of these persons to protect their interests; and (c) Defendants have acted or refused to act on grounds generally applicable  to the entire class, thereby

making appropriate final declaratory and injunctive relief with respect to the class as a whole.

## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues of fact herein properly triable before a jury under any statutory or common law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and class members pray for judgment against the Defendants as follows:

1.      Award Plaintiffs and the Class damages to compensate them for the injuries they suffered as a result of Defendants' unlawful conduct in an amount to be determined at trial;

2.      Award Plaintiffs and the Class liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2724(b)(1);

3.      Award Plaintiffs and the Class punitive damages with respect to their claims arising under 18 U.S.C. § 2724(b)(2) and *Smith v. Wade*, 461 U.S. 30 (1983);

4.      Award Plaintiffs reasonable expenses incurred in this litigation, including attorney and expert fees under 42 U.S.C. § 1988 and 18 U.S.C. § 2724(b)(3);

5.      Grant an injunction permanently enjoining all Defendants from viewing, accessing, using, or disclosing Plaintiffs' and class members' Private Data in violation of the DPPA, and for establishment of a system that actually protects, monitors and safeguards Plaintiffs' and class members' Private Data;

6.      Grant Plaintiffs and the Class all appropriate prospective relief;

7.     Certify the proposed class of persons harmed by Defendants' conduct;

8.     Appoint Plaintiffs as Class Representatives and appoint undersigned counsel as Class Counsel; and

9.     For such other and further relief as this Court deems just and equitable.

Dated: June 21, 2013

Respectfully submitted:

**CROWDER, TESKE, KATZ & MICKO, PLLP**

By:  s/ Douglas L. Micko
Vildan A. Teske (#241404)
Douglas L. Micko (#299364)
Marisa C. Katz (#389709)
222 South Ninth Street, Suite 3210
Minneapolis, Minnesota  55402
Telephone: (612) 746-1558
micko@ctkmlaw.com
teske@ctkmlaw.com
katz@ctkmlaw.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
Joseph C. Bourne (#0389922)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
jbourne@gustafsongluek.com

**FARRISH JOHNSON LAW OFFICE, CHTD.**
Scott V. Kelly (#132937)
William S. Partridge (#84256)
Daniel J. Bellig (#0389075)
1907 Excel Drive
Mankato, Minnesota 56001
Tel: (507) 625-2525
Fax: (507) 625-4394
skelly@farrishlaw.com
wpartridge@farrishlaw.com
dbellig@farrishlaw.com

**SIEBEN GROSE VON HOLTUM & CAREY**
Susan M. Holden (#0189844)
Jeffrey M. Montpetit (#0291249)
901 Marquette Avenue, Suite 500
Minneapolis, Minnesota 55402
Tel: (612) 333-4500
susan.holden@knowyourrights.com
jeffrey.montpetit@knowyourrights.com

**SAPIENTIA LAW GROUP PLLC**
Jonathan A. Strauss (#0279602)
Lorenz F. Fett (#196769)
Sonia Miller-Van Oort (#278087)
Kenneth H. Fukuda (#0389301)
12 South Sixth Street, Suite 1242
Minneapolis, Minnesota 55402
Tel: (612) 756-7100
Fax: (612)756-7101
jons@sapientialaw.com
larryf@sapientialaw.com
soniamv@sapientialaw.com
kennf@sapientialaw.com

**CONSUMER JUSTICE CENTER, P.A**
Thomas J. Lyons, Jr., Esq. (#249646)
**LYONS LAW FIRM, P.A.**
Thomas J. Lyons, Esq. (#65699)
367 Commerce Court
Vadnais Heights, Minnesota 55127
(651) 770-9707
(651) 704-0907 Facsimile
tommycjc@aol.com
tlyons@lyonslawfirm.com

**LAW OFFICES OF JOSHUA R. WILLIAMS**
Joshua R. Williams (#389118)
Tim M. Phillips (#390907)
3249 Hennepin Avenue S, Suite 216
Minneapolis, Minnesota 55408
(612) 486-5540
(612) 605-1944 Facsimile
jwilliams@jrwilliamslaw.com
tphillips@jrwilliamslaw.com

**GRIES & LENHARDT, P.L.L.P**
Patrick W. Michenfelder (#24207X)
12725 43rd Street NE, Suite 201
St. Michael, Minnesota 55376
Tel: (763) 497-3099
Fax: (763) 497-3639
patrickm@grieslenhardt.com

**SCHWEBEL, GOETZ & SIEBEN, P.A.**
William R. Sieben (#0100808)
Richard L. Tousignant (#0178731)
5120 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Tel: (612) 377-7777
Fax: (612) 333-6311
bsieben@schwebel.com
rtousignant@schwebel.com

**ATTORNEYS FOR PLAINTIFFS AND THE CLASS**